Argued and submitted February 12, reversed June 22, City of Eugene's reconsideration denied August 12, Lane County's reconsideration denied September 9, both petitions for review allowed September 29, 1988 (306 Or 660)
See later issue Oregon Reports

In the Matter of the Legality of an
Intergovernmental Agreement Between Lane County
and the City of Eugene Regarding Certain
Improvements to the Eugene Municipal Airport.

ROGERS,
*Appellant,*

*v.*

LANE COUNTY et al,
*Respondents.*

(16-87-00752; CA A44047)

756 P2d 665

Larry O. Gildea, Eugene, argued the cause for appellant. With him on the briefs was James B. Ehrlich, Eugene.

Timothy J. Sercombe, Eugene, argued the cause for respondents. With him on the brief were Harrang, Long, Watkinson & Arnold, and William A. Van Vactor, Lane County Counsel, Eugene.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

WARDEN, P. J.

## WARDEN, P. J.

This is a validation proceeding brought pursuant to ORS 33.710[1] on the petition of Lane County (County) and the City of Eugene (City), seeking a declaratory judgment to the effect that County and City have the authority to enter into an intergovernmental agreement for County to share with City proceeds of taxes on motor vehicles and motor vehicle fuels for expansion and improvement of City's airport under ORS 294.950.[2] Appellant appeals from the judgment of the trial court allowing the petition to validate the agreement.

The agreement provides that County grants to City $1,574,144 to be used for expenditures "allowable under Oregon Constitution, art. IX, sec. 3a." for construction of an entry and exit road system for the airport, an airport main public parking lot facility and covered walkways between the parking lot and the airport terminal building.

Appellant contends that the trial court erred in determining that the proposed expenditures were authorized under Article IX, section 3a, of the Oregon Constitution, which provides, in part:

"[R]evenue from the following shall be used exclusively for the construction, reconstruction, improvement, repair, maintenance, operation and use of public highways, roads, streets and roadside rest areas in this state:

"(a)   Any tax levied on, with respect to, or measured by the storage, withdrawal, use, sale, distribution, importation or receipt of motor vehicle fuel or any other product used for the propulsion of motor vehicles; and

---

[1] ORS 33.710, dealing with judicial examination to determine the legality of the actions and organizations of municipal corporations, provides, in part:

"(2)   The governing body may commence a proceeding in the circuit court of the county in which the. municipal corporation or the greater part thereof is located, for the purpose of having a judicial examination and judgment of the court as to the regularity and legality of:

"* * * * *

"(d)   The authorization of any contract and as to the validity of the contract, whether or not it has been executed."

[2] ORS 294.950 provides, in relevant part:

"(2)   [A] county may share the proceeds of any tax or excise described in section 3a, Article IX of the Oregon Constitution, with any city situated in whole or in part within the county * * *."

"(b)   Any tax or excise levied on the ownership, operation or use of motor vehicles."

In determining that the airport expenditures were authorized by the constitution and ORS 294.950(2), the trial court stated:

"[I]t's my opinion that the agreement entered into now between the City and County is legal. It does meet all the statutory and constitutional requirements that are necessary for it to enter into that agreement. The use and benefit theory is one that I think makes a great deal of sense, particularly in this sort of situation. The parking lot, the access roads, the walkway all seem to me to be directly related to and for the direct use and benefit of the motoring public to use the roads that go to the airport."

The trial court purported to apply a use-benefit test, referred to in opinions of the Attorney General. The test, in a broad sense, requires that taxes derived from use of highways should be applied for the benefit of users of the highways. However, another opinion of the Attorney General, dealing with the constitutional provision in issue, states:

"[B]enefit alone is not sufficient. Art IX, Sec 3 a. does not authorize expenditures for anything as broad as benefits to highway users, but limits them 'exclusively for the construction, reconstruction, improvement, repair, maintenance, operation and use of public highways, roads, streets and roadside rest areas * * *.'

"In short, expenditure must be for the highway *itself*. In 35 Op Att'y Gen 198 (1970), it was concluded that indirect benefits to highway users, such as mass transit facilities which reduce highway congestion, were not included." 41 Op Att'y Gen 545, 547 (1981). (Emphasis in original.)

The opinion concluded that use of highway funds for footpaths and bicycle trails outside highway right-of-ways was not permitted.

Although Attorney General opinions are not precedential, the quoted excerpt is consistent with the legislative intent expressed in the Voters' Pamphlet concerning the ballot measure by which the people adopted Article IX, section 3a. The committee of legislators appointed by the Secretary of State to provide an impartial explanation of the ballot measure reported:

"This measure repeals Section 3, Article IX, of the Oregon Constitution which specifies the permitted uses of monies derived from taxes on motor vehicles and motor vehicle fuels, and enacts in its place a new section which curtails the permitted uses of these tax revenues.

"Presently, motor vehicle taxes and motor vehicle fuel taxes, after administration costs and any lawful refunds and credits, are to be used only for construction, reconstruction, operation, use and policing of public highways, roads and streets, including the retirement of highway-related revenue bonds and for the acquisition, development, care and use of parks and recreational, scenic or historic places.

"This measure eliminates the use of these motor vehicle and motor vehicle fuel revenues for the funding of police, parks, scenic and historic places, permitting their use only for highways, roads, streets and roadside rest areas * * *. The measure allows money from taxes on recreational vehicles to be used for parks and recreational areas and money from taxes on commercial vehicles to be used to enforce commercial vehicle laws."

Given the specific language in Article IX, section 3a, and the legislative intent expressed in the Voters' Pamphlet, we conclude that the proposed expenditures for a parking lot facility and covered walkways are not authorized by the constitution. They are, at best, highway-related projects.

Reversed.